Kenworth of Dothan, Inc., and its salesman Michael Haisten (hereinafter together referred to as "Kenworth"), are defendants in an action pending in the Houston Circuit Court. They appeal from the trial court's order denying their second motion to compel arbitration of the claims filed against them by the plaintiff Bruner-Wells Trucking, Inc. We affirm.
Bruner-Wells, an Alabama corporation, purchased a used Kenworth truck from Kenworth. Haisten negotiated the sale on behalf of Kenworth. Brandi Bruner negotiated the sale of behalf of Bruner-Wells. On or about February 10, 1997, Bruner-Wells signed a buyer's order agreeing to the purchase of the truck. Bruner-Wells alleges that Kenworth assured it that the truck met Department of Transportation certification requirements and was approved for commercial use. The buyer's order, dated February 10, 1997, contains the following arbitration provision on the reverse side: *Page 273 
 "ARBITRATION. Any controversy or claim arising out of or relating to this Buyer's Order or otherwise relating in any fashion to the purchase or sale of the equipment shall be submitted to arbitration in Birmingham, Alabama, in accordance with the rules of the American Arbitration Association."
The buyer's order was modified to correct the sales-tax rate and the sales tax. The parties signed the modified buyer's order on February 15, 1997. Unlike the February 10, 1997, buyer's order, the February 15, 1997, buyer's order had no terms stated on the reverse side. Therefore, it contained no arbitration provision.
On its first trip, the used truck began exhibiting mechanical problems. Bruner-Wells alleges that, as a result of those problems, it learned for the first time that the used truck did not meet D.O.T. certification requirements. Bruner-Wells alleges that it discovered several defects that affected the D.O.T. certification, e.g., the absence of emergency reflectors. Bruner-Wells then purchased from Kenworth emergency reflectors for the used truck. The invoice for the purchase of the reflectors contained the following arbitration provision:
 "Arbitration. Any controversy or claim arising out of or relating to this Invoice or otherwise relating in any fashion to the purchase or sale of equipment, parts or service thereon shall be submitted to arbitration in Birmingham, Alabama, in accordance with the rules of the American Arbitration Association."
Bruner-Wells sued Kenworth on March 26, 1997, alleging fraud, deceit, and misrepresentation. Bruner-Wells sought compensatory and punitive damages.
Kenworth moved to compel arbitration. In its motion, Kenworth cited the arbitration provision found in the February 10, 1997, buyer's order, which was modified by the February 15, 1997, buyer's order, and requested that the trial court compel arbitration. Bruner-Wells responded with an affidavit of Brandi Bruner, in which he stated that "there was no language on the rear of any sales order that he signed." Bruner-Wells also filed an affidavit of Lamar Miller, a forensic document examiner, in which he stated that the signatures on the February 10 buyer's order "were probably not written by Brandi Bruner." Kenworth filed Haisten's affidavit stating that he witnessed Bruner sign that buyer's order. The trial court issued an order on November 7, 1997, finding that the contract between Kenworth and Bruner-Wells consisted of both the February 10 and the February 15 buyer's orders. The trial court also ordered that the case proceed to a jury trial for a determination of whether the signature "Brandi Bruner" on the February 10 buyer's order, which contained the arbitration provision, was forged. The court's order specified that if the jury concluded it was a forgery, then the court would continue the case for a ruling by the jury as to all issues. However, the order also stated that if the jury found the signature to be valid, then the claims would be submitted to arbitration. Kenworth did not seek review of that decision. After the issuance of this order, both parties proceeded with discovery.
On October 1, 1998, Kenworth filed a second motion to compel arbitration, seeking the enforcement of the arbitration agreement found in the contract for the purchase of emergency reflectors for the truck. On November 9, 1998, the trial court denied that second motion to compel arbitration. Kenworth filed this appeal.
In reviewing a trial court's refusal to compel arbitration, this Court's review is de novo. See Ex parte Warrior Basin GasCo., 512 So.2d 1364, 1368 (Ala. 1987). This Court has held that a trial court's ruling on a question of law is not within the trial court's discretionary function; therefore, rulings on these motions are subject to de novo review. A de novo review is a review without any assumption of correctness. King Mines Resort,Inc. v. Malachi Mining Minerals, Inc., 518 So.2d 714 (Ala. 1987).
The Federal Arbitration Act provides that a written agreement to arbitrate *Page 274 
future controversies is enforceable, if the agreement is voluntarily entered and appears in a contract that concerns a transaction involving interstate commerce. 9 U.S.C. § 3 (1970). See Reynolds Reynolds Co. v. King Automobiles, Inc., 689 So.2d 1
(Ala. 1996). Because arbitration is a creature of contract, ordinary contract rules govern the interpretation of arbitration provisions. Blount International, Ltd. v. James River-Pennington,Inc., 618 So.2d 1344, 1345 (Ala. 1993). If an uncertainty or ambiguity exists as to whether the arbitration provision applies, then this Court is bound to resolve that uncertainty or ambiguity in favor of arbitration. Koullas v. Ramsey, 683 So.2d 415, 416-17
(Ala. 1996).
The parties do not dispute that Kenworth and Bruner-Wells entered into a valid arbitration agreement, nor do they dispute that the arbitration agreement appeared in a contract evidencing a transaction involving interstate commerce. Bruner-Wells contends, however, that the arbitration agreement at issue is not related to the original claim or controversy. Kenworth argues that the arbitration provision in the invoice for the reflectors mandates arbitration of Bruner-Wells's claims in this action. Kenworth asserts that Bruner-Wells established the necessary relation between the invoice and Bruner-Wells's claims by arguing that the invoice for the reflectors evidences the compensable damage it incurred as a result of Kenworth's alleged fraud.
"This Court has held that where a contract signed by the parties contains a valid arbitration clause that applies to claims `arising out of or relating to' the contract, that clause has a broader application than an arbitration clause that refers only to claims `arising from' the agreement." Reynolds Reynolds, 689 So.2d at 2 (emphasis original). The language in the arbitration provision in the invoice requires this Court to give the provision a broader application than it would give other arbitration provisions, because it uses the language "arising out of or relating to," as opposed to "arising from." This Court is further bound to resolve any ambiguity or controversy in favor of arbitration. Allied-Bruce Terminix Companies v. Dobson,513 U.S. 265 (1995). "However, this Court will not stretch the language of a contract to apply to matters that were not contemplated by the parties when they entered the contract." Koullas v. Ramsey,683 So.2d 415, 417 (Ala. 1996) (citing Seaboard Coast Line R.R. v.Trailer Train Co., 690 F.2d 1343 (11th Cir. 1982). To determine whether the arbitration clause applies to Bruner-Wells's claims of fraud, deceit, and misrepresentation, we must consider the intent of the parties.
This Court has affirmed orders compelling arbitration of disputes relating to prior transactions. See Merrill Lynch,Pierce, Fenner Smith, Inc. v. Kirton, 719 So.2d 201 (Ala. 1998);First Family Financial Services, Inc. v. Rogers, [Ms. 1972163, March 19, 1999] 736 So.2d 553 (Ala. 1999). However, those cases are distinguishable. Each of those cases involved an arbitration clause with language clearly including prior transactions. For instance, in Merrill Lynch the arbitration clause in controversy stated:
 "The undersigned agrees, that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior [to], on, or subsequent to the date hereof, shall be determined by arbitration."
719 So.2d at 202. The language in that arbitration provision clearly indicated that disputes related to prior transactions were to be arbitrated. The United States Court of Appeals for the Tenth Circuit has also recognized the right to compel arbitration of disputes relating to prior transactions. See Zink v. MerrillLynch Pierce Fenner Smith, Inc., 13 F.3d 330, 331-33 (10th Cir. 1993) (enforcing an arbitration agreement as to a dispute arising out of contested transaction that predated the execution *Page 275 
of the arbitration clause, because the clause provided for the arbitration of "any controversy . . . arising out of your business or this agreement"). Again, disputes related to prior transactions are arbitrable if the language of the arbitration agreement so provides. The arbitration agreement in the case now before us does not so provide.
In Belke v. Merrill Lynch, Pierce, Fenner Smith,693 F.2d 1023 (11th Cir. 1982), the United States Court of Appeals for the Eleventh Circuit held that disputes related to acts that had occurred before the execution of the arbitration agreement were arbitrable under the terms of the arbitration agreement. The arbitration agreement in Belke covered not only disputes arising out of the agreement, but also, in the disjunctive, "any controversy between [the parties] arising out of [their] business." 693 F.2d at 1025, n. 4. The Court held that "[a]n arbitration clause covering disputes arising out of the contractor business between the parties evinces a clear intent to cover more than just those matters set forth in the contract." 693 F.2d at 1028 (emphasis original). See also Seaboard Coast Line R.R. v.Trailer Train Co., supra, at 1348. Each of the cases upholding the application of arbitration agreements to disputes related to events that had occurred before the agreement was signed contained language very similar to that at issue in Belke; however, the arbitration agreement in our present case contains no such language.
In order for a dispute to be characterized as arising out of or relating to the subject matter of the invoice, and therefore subject to arbitration, the language of the arbitration provision must reasonably apply to the dispute. In this present case, if there is no reasonable connection between Bruner-Wells's claims and the invoice, then we must conclude that the claims are not subject to arbitration; the parties could not reasonably have intended the claims to be subject to arbitration under a clause that required arbitration only for claims "arising out of or related to" the invoice if the claims do not themselves somehow reasonably relate to that invoice. Koullas, 683 So.2d at 418.
The purchase of the reflectors occurred later than, and was separate from, the transaction resulting in the purchase of the truck. The issue raised by Bruner-Wells's complaint is whether Kenworth misrepresented to Bruner-Wells that the truck in question met requirements for D.O.T. certification. This issue can be resolved without reference to the invoice for the purchase of emergency reflectors. Kenworth argues that reference to that invoice is necessary in order for Bruner-Wells to establish the amount of compensatory damages it claims to be entitled to. However, the damage or harm Bruner-Wells claims to have incurred did not arise from the purchase of the reflectors but from the purchase of the truck. Whether Bruner-Wells is entitled to recover on its claims would not depend on the invoice for the purchase of the reflectors; only the determination of the amount of compensatory damages would depend on that invoice. The question whether Bruner-Wells has a viable claim can be resolved without reference to the invoice for the reflectors. Therefore, the trial court properly denied Kenworth's motion to compel arbitration. The arbitration clause on the invoice for the reflectors could not reasonably be interpreted to cover the claims concerning the purchase of the used truck.
We recognize the broad language of the arbitration provision before us, specifically the phrase "relating in any fashion to the purchase or sale of equipment, parts or service thereon." In reviewing arbitration provisions, we apply contract principles. Thus, we must determine if there was a "meeting of the minds." The dispute in this case did not arise from the purchase of the reflectors; it arose from the purchase of the truck. Arguably, the dispute related in some fashion to the purchase of the reflectors, but we must draw a line somewhere in order to prevent the definition of the word "related" from being stretched beyond all legal recognition. In other words, there must be some legal and logical nexus between the source of the *Page 276 
dispute and the arbitration provision at issue in order for a court to say that the parties intended a retroactive application of that provision. The word "related," as used in such an arbitration provision, should not be defined to include any form of relation, even with the words "in any fashion" attached. For example, if in the future Bruner-Wells purchases another set of emergency reflectors for a truck, would that second purchase be related to the purchase of the emergency reflectors in this case? Certainly it would involve the same two parties engaged in the first transaction, and it would involve the same kind of reflector. Is there not a relationship there? Yes, but it is not such a close relationship that one reading the arbitration clause in the first invoice would assume or understand that it covered disputes arising out of the second purchase of reflectors. That is why retroactive agreements to arbitrate require closer scrutiny than agreements calling for arbitration of disputes relating to future activities.
One must conclude, by logical inference, that when the parties engaged in the activities involved in this case they had no intention of applying an arbitration agreement that did not yet exist. However, if the arbitration clause contains retroactive time-specific language, e.g., a phrase reading "this agreement applies to all transactions occurring before or after this agreement," then we may apply the arbitration provision to disputes relating to past events. Or, if the arbitration clause contains language stating that it applies to "all transactions between us" or "all business with us," then we may apply the arbitration clause retroactively. The arbitration clause in this case contains no such language. If Bruner-Wells had a dispute with Kenworth concerning the emergency reflectors and that dispute arose after the purchase of the reflectors, then Bruner-Wells would be compelled to arbitrate if the invoice be deemed a binding contract. However, the emergency reflectors are merely one piece of evidence in Bruner-Wells's overall dispute with Kenworth; they are not at the heart of the dispute. The reflectors are akin to a peripheral issue; their sale did not precipitate the dispute, because the sale came after the transaction that has led to the dispute. In applying such an analysis, we cannot conclude that the arbitration provision on the invoice relating to the reflectors would cover a dispute over the previous purchase of the used truck.
The trial court correctly denied the defendants' motion to compel arbitration. The purchase of the reflectors was a matter collateral to the claims in the present lawsuit. It was a completely independent transaction. The defendants have failed to prove that Bruner-Wells's claims of fraud, deceit, and misrepresentation concerning the purchase of the used truck "[arose] out of or relat[ed] . . . to the [i]nvoice or [to the] sale of [the reflectors]." Therefore, we affirm the order denying arbitration.
AFFIRMED.
Maddox, Houston, Cook, See, Lyons, Brown, and Johnstone, JJ., concur.