876 So.2d 1106 (2003)
CAPITOL CHEVROLET & IMPORTS, INC.
v.
Jean A. PAYNE.
1021027.
Supreme Court of Alabama.
September 12, 2003.
Robert A. Huffaker and R. Austin Huffaker, Jr., of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for appellant.
John T. Alley, Jr., Montgomery, for appellee.
*1107 HOUSTON, Justice.
Capitol Chevrolet & Imports, Inc. ("Capitol"), appeals the Montgomery Circuit Court's denial of its motion to compel arbitration. We affirm.

I. Facts
On September 6, 2001, the plaintiff, Jean A. Payne, purchased a used 1997 Cadillac Catera automobile from Capitol. Capitol financed the purchase of the Catera, and both Payne and Capitol signed a "Retail Installment Sale Contract" and an accompanying arbitration agreement.[1] The arbitration agreement provided, in pertinent part:
"Buyer/lessee and dealer agree that all claims, demands, disputes or controversies of every kind or nature between them arising from, concerning or relating to any of the negotiations involved in the sale, lease, or financing of the vehicle, the terms and provisions of the sale, lease, or financing agreements, the arrangements for financing, the purchase of insurance, extended warranties, service contracts or other products purchased as an incident to the sale, lease or financing of the vehicle, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale, lease, or financing shall be settled by binding arbitration conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Section 1 et seq. and according to the Commercial Arbitration Rules of the American Arbitration Association. Without limiting the generality of the foregoing, it is the intention of the buyer/lessee and the dealer to resolve by binding arbitration all disputes between them concerning the vehicle, its sale, lease or financing, and its condition, including disputes concerning the terms and conditions of the sale, lease or financing, the condition of the vehicle, any damage to the vehicle, the terms and meaning of any of the documents signed or given in connection with the sale, lease or financing of the vehicle, or negotiations for the sale, lease, or financing of the vehicle, or any terms, conditions, representations or omissions made in connection with the financing, credit life insurance, disability insurance, vehicle extended warranty or service contract or other products or services acquired as an incident to the sale, lease or financing of the vehicle."
In September 2002, Payne sued Capitol and a Capitol salesperson, Jason Golden, alleging fraud and conversion. According to Payne's complaint, approximately one month after she purchased the Catera, she returned the Catera to Capitol in reliance on Golden's representation that Capitol had a willing buyer for the vehicle. Payne relinquished possession of the Catera to Capitol and stopped making payments on the car. Payne alleged that Golden, while acting in the line and scope of his employment with Capitol, misrepresented to her that Capitol had a buyer for the Catera, and that, when Payne relinquished *1108 the Catera to Capitol in reliance on that misrepresentation, Golden converted the Catera for his personal use. Payne's complaint alleged that, as a result of the misrepresentation, she lost the use of her vehicle, suffered severe mental anguish, and suffered an adverse credit rating once she stopped making payments on the Catera.
Capitol moved to compel arbitration based on the arbitration agreement Payne signed when she purchased the Catera. Payne, however, argued that her claims, which alleged fraud and conversion, were outside the scope of the arbitration agreement. The circuit court issued the following written order denying Capitol's motion to compel arbitration:
"This matter is before the Court on Defendant Capitol Chevrolet's Motion to Compel Arbitration. [Payne], who frequently traded automobiles, purchased an automobile from Capitol Chevrolet and signed an agreement which contained a broad arbitration clause. Shortly thereafter, Defendant Golden called [Payne] and informed her that he had a buyer for her automobile. [Payne] returned the automobile to Capitol Chevrolet with the understanding that the dealership had a purchaser for the automobile and would sell it for her.
"The salient issue is the scope of the arbitration agreement. Since [Payne] concedes that the original purchase involved interstate commerce, [Capitol] has the burden of proving that the incident at issue is covered by the arbitration agreement..... [Capitol] contends that essentially any dispute between the parties relating to the subject automobile must be arbitrated. [Payne] counters that the sale of the automobile is a new agreement, devoid of an arbitration component. The Court finds the latter argument to be more persuasive. Capitol Chevrolet made an offer to sell the vehicle and [Payne] accepted the offer. Thus, a new contract was formed that did not contain an arbitration clause. In addition, the Court finds that there is no connection between the original contract and the incident at issue. While the arbitration clause in the original agreement is broad, it was not included in the new contract and the parties did not contemplate this resale at the time of the original agreement. Wherefore, it is hereby ordered that [Capitol's] Motion to Compel Arbitration is denied."
Capitol appealed.

II. Standard of Review
We have recently summarized our standard of review of a denial of a motion to compel arbitration:
"An appeal is the proper method by which to challenge a trial court's denial of a motion to compel arbitration. Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171, 1172 (Ala.1999). `[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.' Ex parte Roberson, 749 So.2d 441, 446 (Ala.1999); Ex parte Southern United Fire Ins. Co., 843 So.2d 151 (Ala.2002)."
Orkin Exterminating Co. v. Larkin, 857 So.2d 97, 101 (Ala.2003).

III. Scope of the Arbitration Agreement
On appeal, Capitol argues that because Payne's claims concern the Catera and the financing for the Catera, her claims fall squarely within the scope of the arbitration agreement. Capitol notes that Payne's complaint alleges that, in reliance on Capitol's misrepresentations, Payne *1109 stopped making payments on the note pursuant to which she purchased the Catera, which in turn had a negative effect on her credit rating. Capitol argues that because any credit rating arose from the financing associated with Payne's purchase of the Catera, Payne's claims clearly fall within the scope of the arbitration agreement, which states that "all disputes between [Payne and Capitol] concerning the vehicle, its sale, lease or financing" are to be resolved by binding arbitration. (Emphasis added.) We disagree.
"A motion to compel arbitration is analogous to a motion for a summary judgment. Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102 (1995); Allstar Homes, Inc. v. Waters, 711 So.2d 924 (Ala.1997). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260 (Ala.1995)."
TransSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). "If the party moving to compel arbitration fails to make such a showing, the burden of proof does not shift to the opposing party and the motion should be denied." Ex parte Greenstreet, Inc., 806 So.2d 1203, 1207 (Ala.2001).
In reviewing arbitration provisions, we apply general state-law contract principles. Southern Foodservice Mgmt., Inc. v. American Fid. Assurance Co., 850 So.2d 316, 319 (Ala.2002).
"Whether an arbitration provision encompasses a party's claims is a matter of contract interpretation. That interpretation is guided by the intent of the parties, which, absent ambiguity in the arbitration provision, is evidenced by the plain language of the provision."
Ex parte Discount Foods, Inc., 789 So.2d 842, 844 (Ala.2001).
In Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc., 745 So.2d 271, 275 (Ala.1999), we noted that, when reviewing whether a dispute is sufficiently related to a contract containing a broadly drafted arbitration agreement so as to be covered under the scope of that agreement, there must be "some legal and logical nexus between the source of the dispute and the arbitration provision at issue." Kenworth, 745 So.2d at 275-76. In the present case, we find no such nexus.
While the present action does, in some sense, "aris[e] from... any of the negotiations involved in the sale ... of the vehicle"  Payne obtained possession of the allegedly converted Catera as a result of the initial sale  a fair reading of the arbitration agreement signed by Payne and Capitol leads to the conclusion that the agreement covers only disputes that more closely relate to the initial purchase and financing of the Catera, and the negotiations and sale of other services incident to the initial sale of the Catera. The arbitration agreement states that it covers disputes
"arising from, concerning or relating to any of the negotiations involved in the sale, lease, or financing of the vehicle, the terms and provisions of the sale, lease, or financing agreements, the arrangements for financing, the purchase of insurance, extended warranties, service contracts or other products purchased as an incident to the sale, lease or financing of the vehicle, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale, lease, or financing ... [and] all disputes between [Capitol and Payne] concerning the vehicle, its sale, lease or financing, and its condition, including disputes concerning the terms and conditions of the *1110 sale, lease or financing, the condition of the vehicle, any damage to the vehicle, the terms and meaning of any of the documents signed or given in connection with the sale, lease or financing of the vehicle, or negotiations for the sale, lease, or financing of the vehicle, or any terms, conditions, representations or omissions made in connection with the financing, credit life insurance, disability insurance, vehicle extended warranty or service contract or other products or services acquired as an incident to the sale, lease or financing of the vehicle."
We do not believe that the plain language of the arbitration agreement would lead one to assume or understand that the agreement covered the claims alleged in Payne's complaint  a later fraudulent misrepresentation, unrelated to the original sale of the vehicle, resulting in the conversion of the vehicle. The present dispute involves alleged subsequent tortious conduct on the part of Capitol and its agent that is not close enough in relation to the initial sale of the Catera to be covered by the language of the arbitration agreement. Accordingly, we find that Capitol did not meet its burden in proving the existence of a contract calling for arbitration of the dispute now before us.

IV. Conclusion
Because we find that Capitol did not meet its burden in proving the existence of a contract calling for arbitration of the present dispute, the Montgomery Circuit Court's order denying Capitol's motion to compel arbitration is affirmed.
AFFIRMED.
LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs in part and concurs in the judgment.
SEE, J., dissents.
JOHNSTONE, Justice (concurring in part and concurring in the judgment).
I concur except that I express no opinion on the dictum in footnote 1 to the effect that the typed name of Capitol Chevrolet constitutes a proper "signature" on the arbitration agreement.
SEE, Justice (dissenting).
I respectfully dissent from the majority's affirmance of the trial court's denial of Capitol's motion to compel arbitration. The arbitration agreement provided in part: "Without limiting the generality of the foregoing, it is the intention of the buyer/lessee and the dealer to resolve by binding arbitration all disputes between them concerning the vehicle, its sale, lease or financing." It is certainly possible to construe this language to limit the scope of the arbitration agreement to the initial sale of the vehicle; however, it is also reasonable to construe the language in the arbitration agreement  "all disputes between them concerning the vehicle, its sale, lease or financing"  to apply to any sale of the vehicle.
The question of arbitrability is "`an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)(quoting AT & T Techns., Inc. v. Communications Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). The arbitration agreement Payne signed provides that "any question regarding whether a particular controversy is subject to arbitration shall be decided by the Arbitrator." This Court has held that where the contract specifies that the arbitrator is to resolve questions of arbitrability, a trial court's denial of a motion to compel arbitration based upon whether a claim is subject to *1111 arbitration is improper. Capitol Chevrolet & Imports, Inc. v. Grantham, 784 So.2d 285 (Ala.2000). In Grantham, the arbitration agreement contained the same language regarding the threshold question of arbitrability, and this Court held that the language "clearly provided" that the question of arbitrability would be determined by an arbitrator. Because the question of arbitrability should be decided by an arbitrator as provided in the arbitration agreement, I respectfully dissent.
NOTES
[1] The "Retail Installment Sale Contract" provided that "[t]his contract contains the entire agreement between you and us relating to this contract.... Any change to the contract must be in writing and we must sign it." On appeal, Payne argues that because the arbitration agreement signed by her was a separate document that was not signed by Capitol or referenced in the "Retail Installment Sale Contract," the arbitration agreement is not enforceable. However, because Payne raises this argument for the first time on appeal, we need not address it. See Owens v. National Bank of Commerce, 608 So.2d 390, 391 (Ala.1992). We do note, however, that the typed name "Capitol Chevrolet & Imports, Inc.," which appears on the signature line for the "Seller/Lessor/Dealer," constitutes a proper "signature." Anderson Bros. Chrysler Plymouth Dodge, Inc. v. Hadley, 720 So.2d 895 (Ala.1998).