HARWOOD, Justice.
BellSouth Communications System, L.L.C., the defendant in an action pending in the Jefferson Circuit Court, appeals from an order denying its motion to compel arbitration of all claims asserted against it by the plaintiff, Thomas N. West. We affirm.
West, proceeding individually and on behalf of á putative class, sued BellSouth, alleging breach of contract. West asserted that on October 21, 2002, he had contracted with BellSouth to use its Internet service for a monthly fee of $15.95, but that BellSouth had billed him monthly in the amount of $19.85 and also had charged a $15.00 “setup” fee for installing the service. West claimed that members of the putative class had similarly contracted with BellSouth for the service and that they were similarly overcharged. West sought compensatory damages representing disgorgement of the alleged overcharges. West attached as an exhibit to the complaint a copy of the “service agreement” he had entered into with BellSouth. *655 As pertinent to the issues on appeal, the service agreement contained the following provisions:
“BellSouth (R) Internet Service-Service Agreement. This is a legal agreement between you and BellSouth Telecommunications, Inc. (‘BellSouth’) for the use of the BellSouth (R) Internet Service online gateway and internet access service and related features (the ‘Service’). If you do not agree to the terms and conditions in this Agreement, do not register for or use the Service. By completing the registration and using the Service, you signify your agreement with the terms and conditions of the Agreement. If you do not agree to all of the terms and conditions of this Agreement, please return the client software and all associated materials to BellSouth.
“1. The service. BellSouth (R) Internet Service, which may be marketed as BellSouth (R) Internet Service or under various other BellSouth names or marks including any Equipment and Software used in conjunction therewith, are referred to collectively herein as the ‘Service.’ The Service consists of dial-up Internet Protocol (‘IP’) connectivity to the BellSouth (R) Internet Service online gateway, as well as access or connectivity to any of the information sources or services which may be provided by BellSouth or be available from other service providers participating in or connected to BellSouth’s Service.... By posting updated versions of this Agreement on the Service or otherwise providing notice to you, BellSouth may modify the terms of this Agreement or prices for the Service, and may discontinue or revise any or all other aspects of the Service in its sole discretion and without prior notice. All such changes shall become effective upon posting of the revised Agreement on the Service, as to Service used by you after the date of such changes.... The updated, online version of this Agreement shall supersede any prior paper or disk-based or CD-based copies of this Agreement that may have been included in any browser software or related materials provided by BellSouth.
[[Image here]]
“13.... General.
[[Image here]]
“(d) This Agreement and the Service shall be governed by the laws of the State of Georgia, without regard to its conflicts of laws provisions. If any provision or provisions hereof shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not be in any way affected or impaired thereby.
“(e) This Agreement and any modifications published by BellSouth over the Service constitute the entire and only agreement between you and Bell-South with respect to the Service and supersede all other communications and agreements with regard to the subject matter hereof. Your use of the Service is also governed by Bell-South’s Acceptable Use Policies applicable to the Service, which are available online via the Service and which are subject to change by BellSouth from time to time.”
In its motion to compel arbitration, Bell-South asserted that “[t]he only possible argument against arbitration is the fact that the arbitration provision was added to the parties’ Initial Agreement (i.e., it was not included in the Initial Agreement).” BellSouth asserted, however, that “[a]t the time West filed this Complaint [on September 2, 2003], his initial Agreement with BellSouth had been modified to include an arbitration clause.” (BellSouth’s brief, p. *656 5.) BellSouth attached to its motion as exhibits copies both of the initial agreement (identical to the copy West attached as an exhibit to his complaint) and of the revised agreement containing an arbitration clause. Also attached as an exhibit to the motion was the supporting affidavit of Randall M. Kinkaid, BellSouth’s senior director in its core marketing group. Kin-kaid attested, as pertinent to this appeal, that “BellSouth has revised the agreement that was sent to Mr. West. The revised agreement was posted on BellSouth’s website (‘Online Agreement’), a true and correct copy of which is attached hereto as Exhibit A. The revised Agreement was in effect on September 2, 2003, when Mr. West filed this lawsuit.”
West filed a response to BellSouth’s motion to compel arbitration asserting, among other things, that “he' never agreed to inclusion of .any arbitration clause within” the service agreement. Citing several decisions of the United States Supreme Court, he argued that arbitration was a matter of contract and consent, determined by state law governing the formation of contracts, and that a party could not be required to arbitrate a dispute he had not agreed to arbitrate. He also cited Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc., 745 So.2d 271 (Ala.1999), dealing with the restrictions on the enforcement of retroactive agreements to arbitrate. After conducting a hearing on the motion to compel, the trial judge entered the following order:
“BellSouth claims the right to arbitrate based on an Internet posting. The Plaintiff, Thomas N. West (‘West’) claims that such posting was done in such a way that few BellSouth customers would read it or even know it was there as a part of the arbitration clause. The arbitration ‘agreement’ purported to bar the Plaintiff from having a class action suit, joining with others in a dispute, and to bar punitive damages. Such provisions would take away Plaintiff[’]s rights authorized by law and effectively prohibit[ ] any class action since such prohibition would apply to all claimants. BellSouth’s Motion to Compel Arbitration and To Stay is overruled.”
“[A]n appellate court can affirm a summary judgment on any valid argument, regardless of whether the argument was presented to, considered by, or even rejected by the trial court. Ex parte Wiginton, 743 So.2d 1071 (Ala.1999), and Smith v. Equifax Services, Inc., 537 So.2d 463 (Ala.1988).” Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000).
The initial service agreement authorized BellSouth to modify unilaterally the terms of the agreement by posting an updated version “on the Service or otherwise providing notice” to the customer. The agreement specified that “[a]ll such changes shall become effective upon posting of the revised Agreement on the Service, as to Service used by [the customer] after the date of such changes.” (Emphasis added.) It must be noted that.Kin-kaid’s affidavit does not specify when the revised agreement containing the arbitration provision was “posted on BellSouth’s website,” other than to state that the revised agreement “was in effect on September 2, 2003, when Mr. West filed this lawsuit.” Further, the affidavit makes no statement concerning whether West used BellSouth’s Internet service after the revised agreement was posted on BellSouth’s Web site. Although BellSouth asserts in its initial brief to this Court that “[a]fter BellSouth published the Online Agreement on its web site, Mr. West continued to utilize BellSouth’s dial-up internet service” and that “subsequent to the change in contract terms, Mr. West continued to utilize BellSouth’s dial-up internet service,” *657 there is no support for that contention in Kinkaid’s affidavit, which is BellSouth’s only evidentiary submission. No evidence was introduced by either side at the hearing the trial court. conducted on Bell-South’s motion to compel arbitration, and no representation or argument was made to the court by either counsel concerning the date the revised agreement was posted on the Web site or whether West used BellSouth’s Internet service after that date. In short, the trial judge was informed only that the revised agreement was “in effect” on the date West sued BellSouth.
As noted, by the express terms of the initial agreement, any revised agreement effectuated by posting on the Web site would be effective only “as to Service used by [West] after” the posting. As also noted, consistent with the limited statement by Kinkaid, BellSouth asserts in its brief only that “[a]t the time Mr. West filed this Complaint” the initial agreement had been modified to include an arbitration agreement. In the final analysis, for all that appears from what was before the trial court, West may not have used the Internet service after the revised agreement was posted on BellSouth’s Web site. Moreover, the revised agreement would be effective only “as to” any service West used after the posting. The damages he claims in his action relate exclusively to overcharges he alleges he had incurred by the time he filed the action.
These problems in BellSouth’s proof remain even assuming, for the purpose of this appeal, both that BellSouth’s unilateral modification of its agreement was effective as of its posting and that West subsequently used BellSouth’s Internet service. Once thus effective, when and if West continued to use the service, the revised agreement, including its arbitration provision, would be effective “as to” that continuation of service. “We recognize that ‘any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.’ ” Orkin Exterminating Co. v. Larkin, 857 So.2d 97, 107 (Ala.2003)(quoting SouthTrust Sec., Inc. v. McClellan, 730 So.2d 620, 622 (Ala.1999)). In construing the term “as to” in this instance, however, we are not addressing the scope of the arbitration provision in the revised agreement. Rather, we are simply interpreting the provision of the initial agreement specifying when, and to what extent, any modification of that agreement would take effect. In that regard, “it is a familiar rule of contract construction that ‘any ambiguity must be construed against the drafter of the contract.’ ” Ex parte Palm Harbor Homes, Inc., 798 So.2d 656, 661 (Ala.2001)(quoting Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000)). In this case it is undisputed that BellSouth drafted the service agreement West accepted in October 2002. Given the status of each party, there is no basis for invoking the exception to this general rule that applies when both parties are sophisticated, intelligent business persons who are each represented by legal counsel in arm’s-length negotiations. See Western Sling & Cable Co. v. Hamilton, 545 So.2d 29, 31 (Ala.1989).
In conclusion, because there was no showing that the service agreement had been revised before the date on which West filed his action and no showing that he used the service after the revised agreement was posted on BellSouth’s Web site, and because the revised agreement was effective only “as to” Internet service used by West after the posting of that agreement on BellSouth’s Web site and his claims relate to charges for service predating that posting, we find ample basis for affirming the ruling of the trial court deny *658 ing BellSouth’s motion to compel arbitration.
AFFIRMED.
SEE, BROWN, and STUART, JJ., concur.
NABERS, C.J., concurs in the result.