[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 377 
W. Bruce Smith appeals from an order of the Mobile Circuit Court granting motions to compel arbitration filed by Mark Dodge, Inc., and DaimlerChrysler Corporation. We affirm.
 Facts and Procedural History
On July 21, 2003, Smith purchased from Mark Dodge a used 2001 Dodge Ram truck, which had been manufactured by DaimlerChrysler. The vehicle was accompanied by a warranty issued by DaimlerChrysler. Smith also received a service contract, declaring itself to be "between [Smith] and the selling Dealer [Mark Dodge]" but to be administered by DaimlerChrysler. The service contract provided that it would cover certain "qualifying repairs" to the vehicle. Smith and Mark Dodge jointly signed an arbitration agreement, which provided, in pertinent part:
 "[Smith] and [Mark Dodge] agree that all claims, demands, disputes or controversies of every kind or nature between them arising from, concerning or relating to any of the negotiations involved in the sale, lease, or financing of the vehicle, the terms and provisions of the sale, lease or financing arrangements, the arrangements for financing, the purchase of insurance, extended warranties, service contracts or other products purchased as an incident to the sale, lease or financing of the vehicle, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale, lease or financing shall be settled by binding arbitration. . . . Without limiting the generality of the foregoing, it is the intention of [Smith] and [Mark Dodge] to resolve by binding arbitration all disputes concerning the vehicle, its sale, lease or financing, and its condition, including disputes concerning the terms and conditions of the sale, lease or financing, the condition of the vehicle, any *Page 378 
damage to the vehicle, the terms and meaning of any of the documents signed or given in connection with the sale, lease, or financing of the vehicle, or negotiations for the sale, lease, or financing of the vehicle, or any terms, conditions, representations, or omissions made in connection with the financing, credit life insurance, disability insurance, vehicle extended warranty or service contract or other products or services acquired as an incident to the sale, lease or financing of the vehicle.
 ". . . . [Smith] and [Mark Dodge] further agree that any question regarding whether a particular controversy is subject to arbitration shall be decided by the Arbitrator."
On November 24, 2003, Smith purchased diesel fuel for his truck from a third party. The fuel, contaminated with water, immediately damaged the engine of the truck. Smith had the truck transported to Mark Dodge for repairs that same day. Although the necessary repairs were not covered under either the warranty or the service contract, Mark Dodge performed those repairs in return for payment from Smith's insurance company.
In May 2004, while Smith was driving the truck, the engine again malfunctioned. Smith took the truck to Mark Dodge for repairs. Mark Dodge expressed its willingness to perform the necessary repairs but explained that the repairs were not covered by either the service contract or the warranty and that the cost for the repairs thus would have to be borne by either Smith or his insurance company. The record does not reflect whether these later repairs were performed.
Smith filed this action in the Mobile Circuit Court, alleging that Mark Dodge had been negligent and wanton in repairing the truck in November 2003 and that it and DaimlerChrysler had breached the warranty in May 2004 when Mark Dodge refused to perform the repairs under the warranty.[1] He also alleged that DaimlerChrysler had breached the service contract in 2004. Mark Dodge and DaimlerChrysler each moved to compel arbitration, and the trial court granted each motion. Smith appeals.
 Standard of Review
This Court reviews de novo the grant of a motion to compel arbitration. Springhill Nursing Homes, Inc. v. McCurdy,898 So.2d 694, 696 (Ala. 2004). A ruling on a motion to compel arbitration is to be reviewed in a manner analogous to that of a ruling on a motion for a summary judgment. The party seeking to compel arbitration must first prove both that a contract calling for arbitration exists and that the contract evidences a transaction involving interstate commerce. 898 So.2d at 696. Once this showing has been made, the burden then shifts to the nonmovant to show that the contract is either invalid or inapplicable to the circumstances presented. 898 So.2d at 696-97.
 Analysis I. Whether Smith's Claims Against Mark Dodge are Arbitrable
It appears undisputed that a valid contract calling for arbitration exists and that that contract evidences a transaction involving interstate commerce. Smith argues only that his dispute with Mark Dodge concerning its repairs to the truck in 2003 and its refusal in 2004 to repair the truck under the warranty falls outside the *Page 379 
scope of the arbitration agreement because, he argues, that agreement "pertained to any and all incidences surrounding the purchase of Smith's vehicle from Mark Dodge and did not contemplate any future transactions involving any of the parties." (Smith's brief, at 11.) Given the limited nature of this argument, we consider Smith to have conceded that he bears the burden to prove that the arbitration agreement is inapplicable to his claims.
A threshold issue is which forum should decide the question of the scope of the arbitration agreement. In First Options ofChicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920,131 L.Ed.2d 985 (1995), the United States Supreme Court stated:
 "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, see, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc., [514 U.S. 52, 57 (1995)]; Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985), so the question `who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter."
514 U.S. at 943, 115 S.Ct. 1920. However, the Court warned, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is `clea[r] and unmistakabl[e]' evidence that they did so." 514 U.S. at 944, 115 S.Ct. 1920
(quoting AT T Techs. v. Communications Workers, 475 U.S. 643,649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). This Court has similarly required that trial courts order arbitration of the issue of arbitrability when the plain language of the agreement unquestionably shows that the parties agreed to arbitrate the issue of arbitrability. Polaris Sales, Inc. v. Heritage Imports,Inc., 879 So.2d 1129, 1133-34 (Ala. 2003); and Ex parte Perry,744 So.2d 859, 866-67 (Ala. 1999).
The concluding sentence of the arbitration agreement, which is sometimes referred to as a "First Options clause" and which is quoted above, unquestionably demonstrates that the parties agreed to arbitrate the arbitrability of any controversy. Consequently, any question whether Smith's claims against Mark Dodge are arbitrable is itself for an arbitrator to determine. Polaris,879 So.2d at 1133.
Despite this Court's usually faithful adherence to the FirstOptions rule, we note that Smith cites Capitol Chevrolet Imports, Inc. v. Payne, 876 So.2d 1106 (Ala. 2003), in which we affirmed a trial court's order denying a motion to compel arbitration because there was no "`legal and logical nexus between the source of the dispute and the arbitration provision at issue.'" 876 So.2d at 1109 (quoting Kenworth of Dothan, Inc.v. Bruner-Wells Trucking, Inc., 745 So.2d 271, 275-76 (Ala. 1999)). The plaintiff in Payne had purchased an automobile from the defendant dealer but sued as the result of a second, although related, transaction between them. In conjunction with the purchase of the automobile, the plaintiff signed an arbitration agreement. The plaintiff alleged that approximately one month after she purchased the automobile, she was told by one of the dealer's salesmen that the dealer had a buyer for the automobile, and she therefore relinquished possession of it to the dealer for resale. The salesman's representation was false, according to the plaintiff, and he converted the automobile to his own use. The plaintiff sued him and the dealer, alleging fraud and conversion. The defendants argued that the plaintiff's claims fell within the scope of the arbitration agreement relating to "the sale . . . or financing of the vehicle," whereas the plaintiff argued that her claims were outside the scope of the arbitration clause. We agreed with the plaintiff. *Page 380 
After reviewing the briefs submitted in Payne, however, we note that that case is distinguishable from the present one on the basis of its procedural posture. Although the arbitration agreement in Payne contained a First Options clause, the appealing defendants in that case failed to argue that its presence in the agreement required submitting to arbitration the question regarding the scope of the agreement. In Payne, by not addressing the First Options clause issue, this Court was simply following the well-settled rule that we do not reverse a trial court's judgment on a ground not raised on appeal. Robinov. Kilgore, 838 So.2d 366, 370 (Ala. 2002). Conversely, however, this Court will affirm a judgment for any reason supported by the record that satisfies the requirements of due process, Taylor v.Stevenson, 820 So.2d 810, 814 (Ala. 2001), even where the ground upon which we affirm was not argued before the trial court or this Court. Ex parte CTB, Inc., 782 So.2d 188, 191 (Ala. 2000). The applicability and enforceability of a First Options clause was brought to the Court's attention by DaimlerChrysler, which extensively argues that we should enforce the First Options
clause; Smith has chosen not to respond to this contention by way of a reply brief.
The arbitration agreement contains a First Options clause, which has been brought to this Court's attention by one of the parties, and we reaffirm prior holdings that an arbitration agreement containing a First Options clause, clearly and unmistakably manifesting the intention of the parties to arbitrate the question whether a particular dispute or controversy is arbitrable, requires that such a dispute or controversy be submitted to arbitration. We therefore conclude that the trial court was correct in granting Mark Dodge's motion to compel arbitration.
 II. Whether Smith's Claims against DaimlerChrysler are Arbitrable
Smith next argues that his claims against DaimlerChrysler cannot be arbitrated because, he says, the parties did not contemplate that DaimlerChrysler, a nonsignatory to the arbitration agreement, would be entitled to enforce the agreement. DaimlerChrysler argues that Smith is equitably estopped from refusing to arbitrate those claims.
A party typically manifests its assent to arbitrate a dispute by signing the contract containing the arbitration provision. Exparte Stamey, 776 So.2d 85, 88-89 (Ala. 2000). One of the key exceptions to this rule is the theory of equitable estoppel, under which a nonsignatory can enforce an arbitration provision when the claims against the nonsignatory are "`"intimately founded in and intertwined with"'" the underlying contract obligations. Stamey, 776 So.2d at 89 (quoting Sunkist SoftDrinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir. 1993), quoting in turn McBro Planning Dev. Co. v.Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir. 1984)).
This Court has crafted one exception to that exception: unless the arbitration provision contains sufficiently broad language that indicates that the nonsignatory was contemplated as a party, we have repeatedly held that the nonsignatory lacks "standing" to enforce the arbitration agreement. Med Ctr. Cars,Inc. v. Smith, 727 So.2d 9, 19 (Ala. 1998); Ex parte Isbell,708 So.2d 571, 581 (Ala. 1997); Ex parte Jones, 686 So.2d 1166,1168 (Ala. 1996); and Ex parte Jones, 628 So.2d 316, 317 (Ala. 1993). Where "the language of the arbitration provisions limited arbitration to the signing parties," this Court has not allowed the claims against the nonsignatories *Page 381 
to be arbitrated. Stamey, 776 So.2d at 89.
If an arbitration agreement is written in broad language so that it applies to "[a]ll disputes, claims or controversies arising from or relating to this Contract or the relationshipswhich result from this Contract," Ex parte Napier,723 So.2d 49, 51 (Ala. 1998) (emphasis added), or even in slightly narrower language so that it applies to "ALL DISPUTES, CLAIMS OR CONTROVERSIES ARISING FROM OR RELATING TO THIS CONTRACT OR THEPARTIES THERETO," Stamey, 776 So.2d at 91 (capitalization in original; emphasis added), this Court will proceed to determine whether arbitration may be compelled under the doctrine of equitable estoppel.
Conversely, if the language of the arbitration provision is party specific and the description of the parties does not include the nonsignatory, this Court's inquiry is at an end, and we will not permit arbitration of claims against the nonsignatory. See Jim Burke Auto., Inc. v. McGrue,826 So.2d 122, 131 (Ala. 2002) (affirming the trial court's order denying a nonsignatory's motion to compel arbitration where the arbitration agreement was between "you [a signatory plaintiff] and us [a signatory defendant] or our employees, agents, successors or assigns") (bracketed language added); Ex parte Lovejoy,790 So.2d 933, 938 (Ala. 2000) (issuing a writ of mandamus directing a trial court to enter an order denying a nonsignatory's motion to compel arbitration where the arbitration provision was limited to "all disputes or controversies between you [Lovejoy] and us[Allen Motor Company and its assignees]") (bracketed language and emphasis in original); First Family Fin. Servs. v. Rogers,736 So.2d 553, 560 (Ala. 1999) (reversing a trial court's order granting a nonsignatory's motion to compel arbitration where "you [the plaintiffs] and we [First Family]" agreed to arbitrate and the arbitration provision elsewhere stated that it applied to "all claims and disputes between you [the plaintiffs]and us [First Family]," and furthermore stated that it applied to "any claim or dispute . . . between you [the plaintiff] andany of our [First Family's] employees or agents, any of ouraffiliate corporations, and any of their employees or agents") (bracketed language and emphasis in original); and Med CenterCars, 727 So.2d at 19 (affirming a trial court's order denying nonsignatories' motions to compel arbitration where the arbitration provisions were limited to disputes and controversies "BETWEEN BUYER AND SELLER") (capitalization in original).
The arbitration agreement signed by Smith and Mark Dodge provides, in pertinent part:
 "[Smith] and [Mark Dodge] agree that all claims, demands, disputes or controversies of every kind or nature between them arising from, concerning or relating to any of the negotiations involved in the sale, lease, or financing of the vehicle, the terms and provisions of the sale, lease or financing arrangements, the arrangements for financing, the purchase of insurance, extended warranties, service contracts or other products purchased as an incident to the sale, lease or financing of the vehicle . . . shall be settled by binding arbitration. . . .
 ". . . .
 "This Agreement is binding upon, and inures to the benefit of [Smith] and [Mark Dodge] and the officers, employees, agents and affiliated entities of each of them. . . .
 "[SMITH] AND [MARK DODGE] UNDERSTAND THAT THEY ARE AGREEING TO RESOLVE THE DISPUTES *Page 382 BETWEEN THEM DESCRIBED ABOVE BY BINDING ARBITRATION, RATHER THAN BY LITIGATION IN ANY COURT."
(Boldface type and capitalization in original; all other emphasis added.)
Much of the text of the arbitration agreement seems to apply only to Smith and Mark Dodge, reciting as it does twice that Smith and Mark Dodge shall settle by arbitration the claims, demands, disputes, and controversies "between them." The agreement further explains, however, that it is "binding upon" not only Smith and Mark Dodge, but also other described parties. DaimlerChrysler notes that one category of additional parties is "affiliated entities" of either party. DaimlerChrysler argues that it is one of Mark Dodge's "affiliated entities." That term is undefined in the arbitration agreement. (In Rogers, supra, the term "our affiliate corporations" was defined in the arbitration agreement as "our parent corporations, subsidiary corporations, and sister corporations." 736 So.2d at 556. It was undisputed that the nonsignatory insurance companies seeking to compel arbitration did not qualify as "affiliate corporations" under that definition.)
The adjective "affiliated" is defined as "closely associated with another typically in a dependent or subordinate position."Merriam-Webster's Collegiate Dictionary 21 (11th ed. 2003). The verb "affiliate" is defined as "to attach as a member or branch: bring or receive into close connection." Webster's Third NewInternational Dictionary 35 (Merriam-Webster, Inc. 1981). A fair reading of these dictionary definitions indicates that to be affiliated with one another, Mark Dodge and DaimlerChrysler must be somehow closely connected. The record reflects that the two are intimately associated. Their association was such that in issuing the service contract, DaimlerChrysler could presume to commit that the contract was "between [Smith] and the selling Dealer." Mark Dodge was an automobile dealership selling Dodge vehicles, one of DaimlerChrysler's line of vehicles, and was an "Authorized DaimlerChrysler Service Contract Dealer." Smith purchased the vehicle from Mark Dodge and, according to Smith's contentions on appeal, Mark Dodge and DaimlerChrysler jointly warranted the vehicle. Because Smith has not supplied this Court with a reply brief or otherwise challenged below or here DaimlerChrysler's contention that it is due recognition as an entity affiliated with Mark Dodge, we take DaimlerChrysler's assertion to be uncontradicted; consequently, we cannot conclude that the trial court erred in implicitly finding that DaimlerChrysler had standing to seek to enforce the arbitration agreement against Smith. We therefore proceed to determine whether DaimlerChrysler may enforce the arbitration agreement against Smith.
DaimlerChrysler seeks to compel arbitration as to Smith's allegation of breach of contract and breach of warranty. Smith alleges that by refusing to offer coverage under the service contract for the second round of necessary repairs, DaimlerChrysler breached its service contract and the warranty. DaimlerChrysler may enforce the arbitration agreement against Smith only if Smith's claims against DaimlerChrysler are "intimately founded in and intertwined with" the claims made against Mark Dodge. Stamey, 776 So.2d at 89. All of Smith's claims against DaimlerChrysler arise out of and relate to Mark Dodge's November 2003 repairs, the subsequent malfunctioning of Smith's vehicle, and Mark Dodge and DaimlerChrysler's apparent refusal to perform the repairs in May 2004 under either the warranty or the *Page 383 
service contract. DaimlerChrysler specifically argues that the claims are intertwined, and Smith did not attempt in his only brief to this Court to counter DaimlerChrysler's intertwining argument. Having thus failed even to attempt to rebut the movant's showings, Smith has failed to meet his burden. SeePatriot Mfg., Inc. v. Jackson, 929 So.2d 997, 1006 (Ala. 2005). Therefore, we cannot conclude that the trial court erred in granting DaimlerChrysler's motion to compel arbitration. We affirm the trial court's order compelling arbitration.
 Conclusion
The order of the trial court compelling arbitration is affirmed.
AFFIRMED.
NABERS, C.J., and STUART and BOLIN, JJ., concur.
SEE, J., concurs in the result.
[1] Although the breach-of-warranty count in Smith's complaint seeks a judgment against only DaimlerChrysler, all parties' briefs to this Court proceed on the premise that Smith also alleged a breach of warranty against Mark Dodge.