SELLERS, Justice.
*91 Nissan North America, Inc. ("Nissan"), appeals from an order of the Montgomery Circuit Court compelling it to arbitrate certain claims filed against it by Adrienne Scott ("Scott"). We reverse and remand.
Facts and Procedural History
On July 16, 2015, Scott purchased from Jack Ingram Motors, Inc. ("Jack Ingram"), a new 2015 Nissan Juke automobile, which had been manufactured by Nissan. In connection with the sale of the vehicle, Scott signed an arbitration agreement that states, in relevant part:
"Buyer/Lessee acknowledges and agrees that the vehicle Buyer/Lessee is purchasing or leasing from Dealer has traveled in interstate commerce. Buyer/Lessee thus acknowledges that the vehicle and other aspects of the sale, lease or financing transaction are involved in, affect, or have a direct impact upon interstate commerce.
"Buyer/Lessee and Dealer agree that all claims, demands, disputes or controversies of every kind or nature between them arising from, concerning or relating to any of the negotiations involved in the sale, lease or financing of the vehicle, the terms and provisions of the sale, lease, or financing agreements, the arrangements for financing, the purchase of insurance, extended warranties, service contracts or other products purchased as an incident to the sale, lease or financing of the vehicle, the performance or condition of the vehicle, or any other aspect of the vehicle and its sale, lease, or financing shall be settled by binding arbitration by one arbitrator selected by the Dealer with consent of the Buyer/Lessee conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Section 1 et seq. Without limiting the generality of the foregoing, it is the intention of the Buyer/Lessee and the Dealer to resolve by binding arbitration all disputes between them concerning the vehicle, its sale, lease, or financing, and its condition, including disputes concerning the terms and conditions of the sale, lease, or financing, the condition of the vehicle, any damage to the vehicle, the terms and conditions of any of the documents signed or given in connection with the sale, lease or financing, any representations, promises or omissions made in connection with negotiations for the sale, lease, or financing of the vehicle, or any terms, conditions, representations or omissions made in connection with the financing, leasing, credit life insurance, disability insurance, vehicle extended warranty or service contract or other products or services acquired as an incident to the sale, lease or financing of the vehicle.
"Either party may demand arbitration by serving upon the other party a written demand for arbitration along with a statement of the matter in controversy. The Buyer/Lessee and the Dealer agree that the arbitration proceedings to resolve all such disputes shall he conducted in the city where the dealer's facility is located...."
(Emphasis added.)
On November 15, 2015, Scott took the vehicle to Jack Ingram after smelling fuel in the interior of the vehicle. Jack Ingram informed Scott that it did not detect the smell of fuel inside the vehicle, that it had inspected the fuel system of the vehicle, and that it found no leaks in the fuel system. Two days later, while Scott was driving the vehicle, it spontaneously caught fire.
On November 22, 2016, Scott filed a complaint against Jack Ingram and Nissan, alleging that she had suffered physical injuries as well as mental anguish as a result of the fire; that she had incurred *92 medical expenses for her physical injuries; and that her vehicle was a total loss. Count one of the complaint sought damages against Nissan under the Alabama Extended Manufacturer's Liability Doctrine; count two of the complaint sought damages against Nissan for negligence and wantonness; count three of the complaint sought damages against both Nissan and Jack Ingram for breach of warranty; and count four of the complaint sought damages against Jack Ingram for negligence.
On December 27, 2016, Jack Ingram moved to compel arbitration of the claims filed against it based on the arbitration agreement Scott had signed in connection with the sale of the vehicle. Scott filed a response indicating that, although she was willing to arbitrate her breach-of-warranty and negligence claims against Jack Ingram, she objected to litigating part of the case, i.e., her claims against Nissan, because, she said, "to do so would require all of the parties to incur extra expenses and could result in inconsistent judgments." She indicated in her response that she was willing to arbitrate the case or to litigate the case, but she objected to having to do both. On February 22, 2017, the trial court entered an order holding that, "in the interest of judicial economy," the entire matter should be arbitrated. Nissan filed a motion to reconsider, which the trial court denied. Nissan appeals pursuant to Rule 4(d), Ala. R. App. P.
Standard of Review
"This Court's standard of review on an appeal from a trial court's order granting or denying a motion to compel arbitration is well settled. Bowen v. Security Pest Control, Inc., 879 So.2d 1139, 1141 (Ala. 2003). A direct appeal is the proper procedure by which to seek review of such an order, Rule 4(d), Ala. R. App. P., and this Court will review de novo the trial court's grant or denial of a motion to compel arbitration. Bowen, 879 So.2d at 1141. The party seeking to compel arbitration has the initial burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction involving interstate commerce. Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So.2d 1129, 1132 (Ala. 2003). The party seeking to compel arbitration must present some evidence tending to establish its claim. Wolff Motor Co. v. White, 869 So.2d 1129, 1131 (Ala. 2003). Once the moving party meets that initial burden, the party opposing arbitration has the burden of presenting evidence tending to show that the arbitration agreement is invalid or that it does not apply to the dispute in question. Bowen, 879 So.2d at 1141. See also Title Max of Birmingham, Inc. v. Edwards, 973 So.2d 1050, 1052-53 (Ala. 2007)."
Alabama Title Loans, Inc. v. White, 80 So.3d 887, 891-92 (Ala. 2011).
Discussion
Initially, we note that Jack Ingram, the party seeking to compel arbitration, met its initial burden of proving the existence of an arbitration agreement and proving that the agreement evidenced a transaction involving interstate commerce. Accordingly, the burden then shifted to Scott to show that the arbitration agreement was invalid or that it did not apply to the dispute in question. Unique to this case is the fact that Scott does not oppose arbitration of her claims against Jack Ingram, the party seeking to compel arbitration. Rather, she "objects" to having to separately litigate her claims against Nissan because, she says, litigating those claims would "require all of the parties to incur extra expenses and could result in *93 inconsistent judgments." The trial court agreed with Scott and compelled Nissan, a nonsignatory to the arbitration agreement, to arbitrate the claims asserted against it, citing "judicial economy" as the reason for its holding. Judicial economy, however, is not a proper basis for compelling arbitration against a nonsignatory. See, e.g., Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) ("[T]he [Federal] Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."). It is well established that " ' " '[a]rbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " ' " Custom Performance, Inc. v. Dawson, 57 So.3d 90, 97 (Ala. 2010) (quoting Central Reserve Life Ins. Co. v. Fox, 869 So.2d 1124, 1127 (Ala. 2003), quoting in turn AT & T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), quoting in turn United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ). "A party typically manifests its assent to arbitrate a dispute by signing the contract containing the arbitration provision." Smith v. Mark Dodge, Inc., 934 So.2d 375, 380 (Ala. 2006). The general rule that nonsignatories to an arbitration agreement cannot be compelled to arbitrate their claims is subject to certain exceptions not applicable here.
It is undisputed that Nissan was not a party to the arbitration agreement Scott signed in conjunction with the sale of the vehicle, and, unlike Jack Ingram, Nissan did not seek to compel arbitration of the claims asserted against it. In Jack Ingram Motors, Inc. v. Ward, 768 So.2d 362 (Ala. 1999), this Court discussed an arbitration agreement nearly identical to the arbitration agreement in this case and specifically addressed the issue whether a lessee's claims against the financial-services provider, a nonsignatory to the agreement, were subject to arbitration. In Ward, the lessee agreed to lease a vehicle from Jack Ingram, and, in conjunction with the lease, the lessee and Jack Ingram executed an arbitration agreement. The lessee thereafter sued Jack Ingram and the financial-services provider, alleging fraud, suppression, and wantonness in relation to an undisclosed acquisition fee included in his monthly lease payments; the lessee was not provided with any paperwork that would have placed him on notice that the acquisition fee would be included in his monthly payments. This Court affirmed the trial court's denial of the lessee's motion to compel arbitration against the financial-services provider, concluding that "[t]he arbitration provision is limited by its terms to disputes arising between the 'buyer/lessor' (Ward) and the 'dealer' (Jack Ingram Motors). It is not broad enough to include [the financial-services provider]." 768 So.2d at 364.
Likewise, in the present case, the scope of the arbitration agreement is limited by its terms to disputes between the "Buyer/Lessee" (Scott) and the "Dealer" (Jack Ingram). Accordingly, the arbitration agreement precludes this Court from requiring Nissan to arbitrate the claims asserted against it. See also Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205, 1210 (Ala. 2000) ("[T]he arbitration agreement in this case is specifically limited to the signing parties, namely, Yarbrough, as the purchaser, and Parkway, as the dealer. The language of the arbitration agreement *94 is not broad enough to reach the manufacturer; therefore, DaimlerChrysler is not entitled to compel arbitration ....").
Conclusion
Based on the foregoing, we conclude that the trial court exceeded its discretion by compelling Nissan to arbitrate the claims asserted against it by Scott. The trial court's order is reversed, and the case is remanded for proceedings consistent with this opinion.[1]
REVERSED AND REMANDED.
Stuart, C.J., and Parker, Shaw, and Wise, JJ., concur.

We note that Scott, in her appellee's brief, no longer opposes arbitrating her claims against Jack Ingram and litigating her claims against Nissan, stating that "if Nissan wants to give Scott '2 bites at the apple,' she will take it." Thus, Scott takes no further position on the issue.