33 So.3d 567 (2009)
BEAUFORT ENGINEERING SERVICES, INC., d/b/a BES, Inc.
v.
BALDWIN COUNTY CATTLE & FAIR ASSOCIATION, INC.
1071132.
Supreme Court of Alabama.
September 30, 2009.
Allan R. Chason of Chason & Chason, P.C., Bay Minette, for appellant.
Taylor D. Wilkins, Jr., and Marcus E. McDowell of Wilkins, Bankester, Biles & Wynne, Bay Minette, for appellee.
PER CURIAM.
AFFIRMED. NO OPINION.
See Rule 53(a)(1) and (a)(2)(F), Ala. R.App. P.
COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
*568 LYONS, J., concurs specially.
SHAW, J., dissents.
LYONS, Justice (concurring specially).
I write specially to respond to Justice Shaw's dissenting opinion.
The dissenting opinion relies on two separate and independent theories. First, the dissenting opinion concludes that the dispute under the oral contract arose out of, or was related to, the written architecture contract between Beaufort Engineering Services, Inc., d/b/a BES, Inc. ("BES"), and Baldwin County Cattle and Fair Association ("the Fair Association."). Second, the dissenting opinion concludes that the terms of the architecture contract apply to, and were incorporated as a part of, the subsequent oral contract.
Turning first to the conclusion that the oral contract arose out of, or was related to, the architecture contract and therefore that the arbitration clause in the architecture contract applies to a dispute regarding the oral contract, we do not here deal with arbitrability of tort claims arising out of a contract containing an arbitration clause such as was presented in Elizabeth Homes, L.L.C. v. Cato, 968 So.2d 1 (Ala. 2007), and Koullas v. Ramsey, 683 So.2d 415 (Ala.1996). A distinction exists between such cases and cases such as this one, where the question is the arbitrability of claims in separate contracts where only one contract contains an arbitration clause. See Mirant Americas Energy Marketing LP v. 1st Rochdale Coop. Group, Ltd., 363 F.Supp.2d 679, 681-82 (S.D.N.Y.2005):
"While federal policy `strongly favors arbitration,' and arbitration clauses should therefore be construed `as broadly as possible,' Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir.1995), ultimately, since arbitration is a contractual matter governed by the parties' stated intent, a party cannot be required to submit a claim to arbitration without its contractual consent, express or implied, JLM Industries, Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir.2004). The question, therefore, is whether the arbitration clause in the Credit Agreement can be construed as covering a dispute that does not arise out of an alleged breach of that agreement and does not require construction of that agreement.

"It is clear that, under some circumstances, an arbitration clause in a contract can bind parties to arbitration even when the claim is not breach of that contract. However, the Second Circuit has struggled to articulate a useful test of when those circumstances are found. See id. at 172-73 (acknowledging that tests do not yield `principled way' of determining which claims should be arbitrated); Mehler v. Terminix Int'l Co. L.P., 205 F.3d 44, 50 (2d Cir.2000) (collecting various tests Circuit has stated, seemingly interchangeably). In some cases, the Circuit has required the claim to `implicate issues of contract construction or the parties' rights and obligations under' the contract containing the arbitration clause, Louis Dreyfus Negoce v. Blystad Shipping & Trading, Inc., 252 F.3d 218, 225 (2d Cir.2001); Collins & Aikman, 58 F.3d at 23, while in others it has required only that the claim `touch matters' covered by the contract, a test which potentially sweeps a broader set of claims into arbitration, Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir.1987).
"On closer scrutiny, however, it is apparent that the cases employing the `touch matters' test do not involve a choice between two contracts (as here), or, indeed, contractual claims at all. Instead, in these cases plaintiffs have sued in tort, alleging misdeeds by defendants *569 related to the making and performance of the contracts. See JLM Industries, 387 F.3d at 176 (antitrust claims alleging that defendants conspired to fix artificially high prices through a series of contracts were `arising out of' the contract); Genesco, 815 F.2d at 845-47 (RICO claims alleging that suppliers engaged in conspiracy to overcharge and supply defective goods were `matters relating to the agreements between the parties'); see also Kerr-McGee Refining Corp. v. M/T Triumph, 924 F.2d 467, 468-69 (2d Cir. 1991). Indeed, the `touch matters' language originated in Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 624 n. 13, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), which itself involved an alleged conspiracy to violate the Sherman Act.
"On the other hand, where, as here, the question is whether the arbitration clause in one contract should govern a claim alleging breach of a different contract, the Second Circuit consistently has asked whether the claim requires construction of the contract that contains the arbitration clause or otherwise implicates the parties' rights and obligations under that contract. See Louis Dreyfus, 252 F.3d at 228-29; Collins & Aikman, 58 F.3d at 23; see also Lewis v. N.J. Sports Prods., Inc., [No. 02 Civ. 6505 SAS, March 12, 2003] (S.D.N.Y. 2003) (collecting cases) [not reported in F.Supp.2d]."
(Emphasis added.)
Here the architecture contract predated the formation of the oral agreement. The architecture contract actually refers to the other contract as an event to occur in the future; no aid is thus available to BES under the rule requiring construction of contemporaneous agreements as a whole. Although the performance of the work in the alleged oral contract was a necessary predicate for the performance of the architecture contract, I see nothing in the record before us that requires construction of the architecture contract to resolve the dispute under the alleged oral contract.
Alabama law is no different than the rule expressed in Mirant Americas Energy Marketing LP. We stated in Koullas v. Ramsey, 683 So.2d at 418, dealing with whether to sweep tort claims under an arbitration clause that "in order for a dispute to be characterized as arising out of or relating to the subject matter of the contract, and thus subject to arbitration, it must at the very least raise some issue that cannot be resolved without a reference to or construction of the contract itself." Here any reference to the architecture contract is nothing more than an acknowledgment of its existence and not a referral to its terms for the determination of any issues. Because no provision of the architecture contract requires interpretation in order to determine the issue of breach of the alleged oral contract, I cannot accept the dissenting opinion's conclusion that the dispute under the oral contract arose out of, or was related to, the architecture contract.
The dissenting opinion concludes that the terms of the architecture contract apply to, and were incorporated as a part of, the oral contract as additional justification for reversal of the trial court's judgment. The dissenting opinion notes the argument presented in the trial court that "`[t]he arbitration provision and other material provisions of the [architecture contract] apply to the Oral Contract, and are incorporated therein by reference, with the exception of the compensation provisions thereof.'" 33 So.3d at 573. The dissenting opinion then points to the affidavit of William W. Bolton, president of BES, in which he stated: "`[At that time], we entered *570 into an oral agreement [with the Fair Association] that we would do that work at our customary hourly rates, but otherwise the terms of that oral agreement were the same as those of the [architecture contract].'" 33 So.3d at 573. The dissenting opinion then relies on this contention and the evidence in support thereof to argue for reversal of the trial court's order denying arbitration.
Nowhere in BES's principal brief to this Court is there any reference to the aforementioned testimony of Bolton featured in the dissenting opinion dealing with the incorporation of the terms of the architecture contract into the oral contract.
"It is fundamental that the parties have the duty to include in their briefs a statement of all facts relevant to the issues presented for this Court's review. Indeed, Ala. R.App. P. 28 makes that duty crystal clear. Initially, the appellant's brief must include `[a] full statement of facts relevant to the issues presented for review, with appropriate references to the record.' Rule 28(a)(7) (emphasis added). Rule 28(b) requires the appellee to conform to the requirements of subdivision (a)(7), if `the appellee is dissatisfied with [the] statements as made by the appellant.' Also, the argument of each party must contain `the contentions of the [party] with respect to the issues presented, and the reasons therefor, with citations to the... parts of the record relied on.' Rule 28(a)(10) (emphasis added). Where the appellee makes no correction or addition to the appellant's statement of the facts, `[t]he statements made by appellant... will be taken to be accurate and sufficient for decision.' Taylor v. First Nat'l Bank of Tuscaloosa, 279 Ala. 624, 628, 189 So.2d 141, 144 (1966). Obviously, `"this Court is not under a duty to search the record in order to ascertain whether it contains evidence that will sustain a contention made by either party to an appeal."' Brannan & Guy, P.C. v. City of Montgomery, 828 So.2d 914, 920 (Ala.2002) (quoting Totten v. Lighting & Supply, Inc., 507 So.2d 502, 503 (Ala.1987))."
Johnson v. Stewart, 854 So.2d 544, 551-52 (Ala.2002) (opinion on application for rehearing). We are entitled to assume that the facts set forth in BES's principal appellate brief are "sufficient for decision." As noted, BES's principal brief does not refer to the aspect of Bolton's testimony relied on in the dissenting opinion.
BES's entire argument as to this issue in its principal brief to this Court is as follows:
"It is reasonable to assume that the parties' reference in their [architecture contract] to a second agreement to be made later, involving the same underlying transaction, would otherwise include the same terms as their [architecture contract]. For that reason, we submit that the arbitration provision in the [architecture contract] should be deemed incorporated into the later Oral Contract."
Only by completely ignoring the requirements of Rule 28(a)(10), Ala. R.App. P., that the argument of each party must contain "the contentions of the [party] with respect to the issues presented, and the reasons therefor, with citations to the ... parts of the record relied on," can reversal of the trial court's judgment on this issue be justified. The dissenting opinion states in n. 2: "However, I offer the separate and independent theory that the terms of the architecture contract were incorporated into the oral contract only to respond to Justice Lyons's extensive argument in his special writing regarding whether the arbitration provision in the architecture contract applies to the dispute in question." *571 33 So.3d at 576. Of course, this "separate and independent theory" cannot afford a basis on which to reverse the judgment of the trial court without disregarding our rule that we will not reverse a judgment on arguments not made in the appellant's principal brief. Pardue v. Potter, 632 So.2d 470, 473 (Ala.1994) ("Issues not argued in the appellant's brief are waived."). See also Smith v. Mark Dodge, Inc., 934 So.2d 375, 380 (Ala.2006) ("In [Capitol Chevrolet & Imports, Inc. v.] Payne[, 876 So.2d 1106 (Ala.2003)], by not addressing the First Options [of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995),] clause issue, this Court was simply following the well-settled rule that we do not reverse a trial court's judgment on a ground not raised on appeal." (emphasis added)).
SHAW, Justice (dissenting).
Beaufort Engineering Services, Inc., d/b/a BES, Inc. ("BES"), appeals from the denial of its motion to compel arbitration of the claims of the plaintiff, Baldwin County Cattle & Fair Association, Inc. ("the Fair Association"), in this declaratory-judgment action. For the reasons expressed below, I respectfully dissent from the Court's no-opinion affirmance.

Facts and Procedural History
On October 10, 2005, BES and the Fair Association entered into a written contract ("the architecture contract") in which BES agreed to render services in connection with the planning, design, and construction of improvements at a fairground facility located in Robertsdale, which included the construction of a stadium, a civic-center building, a restroom building, and a stable ("the project"). The architecture contract further stated: "[C]ivil design and survey to be handled under a separate contract." The record indicates that "civil design and survey" refers to work in the design and layout of the project site, including the placement of the structures on the site, utilities, and landscaping, as well as the design of the drainage system and traffic control. This work had to be started before the construction of the project could be initiated. Because the nature and extent of the civil-design and survey work could not be accurately estimated, it was not included in the architecture contract. BES contends that the parties entered into an oral contract pursuant to which the Fair Association would be charged an hourly rate for the civil-design and survey work; the Fair Association appears to contend that no such oral contract was actually ever created, although it appears undisputed that the civil-design and survey work was in fact performed.
The architecture contract also contained an arbitration provision, which stated, in pertinent part: "Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to arbitration." It further specified that arbitration would be performed pursuant to the rules of the American Arbitration Association ("the AAA").
In June 2006, the parties purportedly executed an addendum to the architecture contract that provided, among other things, that, notwithstanding any provision in the architecture contract, BES would be paid a "total amount" of $723,634.
In January 2008, BES filed a demand for arbitration with the AAA against the Fair Association, alleging that the Fair Association had failed to pay for all the project work, including the civil-design and survey work. The Fair Association answered the demand, asserted a counterclaim, and argued that some of BES's claims were not subject to arbitration.
Subsequently, the Fair Association filed an action seeking a judgment declaring that there was no oral agreement or contract *572 to provide the civil-design and survey work or, if the court concluded that an oral contract did exist, declaring the parties' respective rights and obligations under that contract. The Fair Association's complaint stated:
"2. BES claims [that] ... BES and [the Fair Association] entered into a separate oral agreement to provide civil design and survey work to [the Fair Association] incidental to the project.
"3. There is no contract for the above mentioned services and no agreement was entered into regarding the alleged separate contract. Notwithstanding, [BES] claims it is owed an hourly rate for the alleged contract in question.
"4. [BES] claims that the separate oral agreement should be arbitrated under the provisions of the separate project contract despite the fact that no oral contract exists and no interstate commerce was involved or contemplated.
"5. [The Fair Association] requests this Court determine that no contract exists or in the alternative, its duties, rights and obligations, if any, under the alleged separate oral agreement for civil design work related to the project."
Additionally, the Fair Association filed a motion in the trial court seeking a stay of the pending arbitration proceedings; the trial court granted the motion, but it limited the stay to the claims "related to the alleged oral contract regarding civil design work."
BES filed what it styled as a motion to alter, amend, or vacate the order granting the motion to stay, pursuant to Rule 59(e), Ala. R. Civ. P., and also filed a motion to compel arbitration. The motion to compel stated, in pertinent part:
"2. That incidental and ancillary to the [architecture contract], BES and [the Fair Association] entered into a separate oral agreement (hereinafter referred to as the `Oral Contract'), which is referred to in Paragraph 1.1.4 of the [architecture contract], under the terms of which BES agreed to provide civil design and survey work to [the Fair Association] for ... the Project.
"3. That the Oral Contract and the claims arising under it are intimately founded in and intertwined with the [architecture contract] in that the services to be rendered by BES under the Oral Contract are exclusively devoted to the same Project which is the subject of the [architecture contract] and are interrelated to those services, being rendered by the same people, at the same time and place, in connection with the same Project and for the benefit of the same owner, as those being rendered under the [architecture contract].
"....
"6. That the parties entered into an Addendum to the [architecture contract],... which imposes a cap or limitation on the compensation to be paid to BES for work done on the community civic center and shelter, or `Coliseum,' in the amount of Seven Hundred Twenty-Three Thousand, Six Hundred Fifty-Four Dollars ($723,654).
"7. That the Addendum was only applicable to the services provided by the [architecture contract] and did not apply to those provided by the Oral Contract and the services to be provided by the Oral Contract were not limited by the cap imposed by the Addendum.[1]

*573 "8. That Paragraph 1.3.5 (Arbitration) of the [architecture contract] provides that `any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to arbitration'....
"9. That the claim, dispute, or other matter in question under the Oral Contract arises out of, is related to, and, in fact is a part of, the same Project which is the subject of the [architecture contract] and that the arbitration provision and other material provisions of the [architecture contract] apply to the Oral Contract, and are incorporated therein by reference, with the exception of the compensation provisions thereof.

"....
"12. That the claims which are admittedly subject to arbitration in the pending proceeding before the [the AAA] Proceeding, including those raised by Counterclaim filed by [the Fair Association], involve charges and credits for work done by BES on the Project and are so inextricably intertwined with and related to the claims for surveying and civil design work done by BES on the same Project that the two cannot practically be resolved in separate proceedings, brought in separate forums."
(Emphasis added.)
The motion to compel was supported by certain documentary exhibits, as well as the affidavit of William W. Bolton, the president of BES. Bolton testified, among other things, that on behalf of BES he had both executed the architecture contract and entered into the oral contract. He stated:
"The reason that the [architecture contract] excluded civil design and survey work was that at the time we executed the [architecture contract], the nature and extent of those services was unknown and could not be estimated. Ultimately, we reached an agreement with [the Fair Association] that the civil design and survey work would be done by BES on a time and material basis at our customary hourly rates. At that time, we entered into an oral agreement with [the Fair Association] that we would do that work at our customary hourly rates, but otherwise the terms of that oral agreement were the same as those of the [architecture contract]. In fact, the anticipated oral agreement was referenced in Paragraph 1.1.4 of the [architecture contract].
"The civil design and survey work was absolutely related to and a part of the architectural and engineering services rendered for the Project. The Project could not be built without the surveying and civil design work being first done...."
(Emphasis added.) Additionally, Bolton's affidavit set forth testimony detailing certain purchases made in connection with the project that he says were made in interstate commerce.
The Fair Association filed a response to the motion to compel arbitration. In it, the Fair Association challenged whether BES had demonstrated that the alleged oral contract affected interstate commerce. Additionally, the Fair Association contended:
"9. BES also now claims the separate oral contract was intimately founded in and intertwined with the [architecture] contract as it was rendered by the same people, at the same time and place and interrelated to the services provided by BES ... essentially that BES was an indispensable party.

*574 "10. This argument is flawed in that, upon information and belief, a Gulf Shores architecture firm actually provided the initial set of plans for the civil design. The name of the firm in Gulf Shores is not known at this time to the [Fair Association].
"11. Therefore, it is impossible for BES to claim that its services were indispensable or so intertwined as to be a part of the initial written agreement when in fact, it did not do the initial work.
"12. Additionally, nothing prevented the [Fair Association] from hiring an outside firm to do civil design."
No evidentiary exhibits were filed in support of the assertions found in the Fair Association's response.
After a hearing, the trial court denied both the motion BES styled as a motion to alter, amend, or vacate and the motion to compel arbitration. BES appeals from the denial of its motion to compel arbitration.

Discussion
On appeal, our review is de novo. Ex parte Roberson, 749 So.2d 441, 446 (Ala. 1999). BES's burden on its motion to compel is as follows:
"The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. `[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.'"
Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000) (citation and emphasis omitted) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (opinion on application for rehearing)).
I believe that BES's motion to compel meets the burden set forth above. BES, through Bolton's affidavit, proved "the existence of a contract calling for arbitration"  the architecture contract  and proved that the "contract evidences a transaction affecting interstate commerce." The burden thus shifted to the Fair Association to show that the arbitration provision "d[id] not apply to the dispute in question." I do not believe that the Fair Association met its burden in that regard.
BES argues on appeal that it is undisputed that there is no challenge to the validity of the architecture contract  both parties are participating in the arbitration of disputes under it. (BES's brief, at 18.) BES contends that "[t]he only issue raised by [the Fair Association] is whether the Oral Contract subsequently entered into between BES and [the Fair Association] is covered within the scope of the arbitration provision contained within the [architecture contract]." (BES's brief, at 18.) BES thus states the issue on appeal as follows: "Whether a dispute involving an oral agreement which arises out of, is related to, and the existence of which is referenced in a written agreement containing a broad arbitration clause, is arbitrable."
Our caselaw requires this Court to interpret the scope of an arbitration provision broadly:
"`In interpreting an arbitration provision, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."' The Dunes of GP, L.L.C. v. Bradford, 966 So.2d 924, 927 (Ala.2007) (quoting Moses H. Cone *575 Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)) (emphasis omitted). Indeed, `"a motion to compel arbitration should not be denied `unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"' Id. (quoting Ex parte Colquitt, 808 So.2d 1018, 1024 (Ala.2001), quoting in turn United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)) (emphasis omitted). 'While, "as with any other contract, the parties' intentions control, ... those intentions are generously construed as to issues of arbitrability."' Carroll v. W.L. Petrey Wholesale Co., 941 So.2d 234, 237 (Ala.2006) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985))."
Kenworth of Mobile, Inc. v. Dolphin Line, Inc., 988 So.2d 534, 545 (Ala.2008).
As BES notes, the architecture contract evidences an agreement by BES and the Fair Association to submit to arbitration any dispute "arising out of or related to" the architecture contract. "The term `arising out of or relating to' has a broad application." Unum Life Ins. Co. of America v. Wright, 897 So.2d 1059, 1086 (Ala.2004). The undisputed testimony indicates that the architecture contract did not contain the terms of the civil-design and survey work because the extent of that work was unknown at the time the architecture contract was executed, that the civil-design and survey work was necessary for the project, and that none of the work contemplated by the architecture contract could be performed until the civil-design and survey work was completed. This evidence demonstrates that the civil-design and survey work is a necessary and required part of the undertaking described in the architecture contract  the project. Thus, this work, and any agreement for its performance, must necessarily "arise out of" or be "related to" the architecture contract. Given that doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration, Kenworth, supra, I would hold that the dispute related to the civil-design and survey work in this case arises out of or is related to the architecture contract and, therefore, should be submitted to arbitration.
Additionally, BES argues on appeal that "[t]he arbitration provision of the [architecture contract] should be deemed incorporated by reference into the subsequent Oral Contract." (BES's brief, at 24.) According to Bolton's affidavit, because the nature and extent of the civil-design and survey work could not be estimated at the time the parties executed the architecture contract, it was necessary for the architecture contract to provide that the parties would "later agree on those services in a separate contract. That was subsequently done by oral agreement...." (BES's brief, at 25.) BES thus argues that "[i]t is reasonable to assume that the parties' reference in their [architecture contract] to a second agreement to be made later, involving the same underlying transaction, would otherwise include the same terms as their [architecture contract]." (BES's brief, at 25.) Indeed, BES states this point in paragraph 9 of the motion to compel: "[T]he arbitration provision and other material provisions of the [architecture contract] apply to the Oral Contract, and are incorporated therein...." This argument is supported by Bolton's testimony, to the effect that "we entered into an oral agreement... that we would do that work at our customary hourly rates, but otherwise the terms of that oral agreement were the same as those of the [architecture contract]. In fact, the anticipated oral agreement *576 was referenced in Paragraph 1.1.4 of the [architecture contract]."
In sum, BES argued in its motion to compel that the dispute regarding the oral contract arose out of, or was related to, the architecture contract, and that the terms of the architecture contract apply to, and were incorporated as a part of, the oral contract:
"9. That the claim, dispute, or other matter in question under the Oral Contract arises out of, is related to, and, in fact is a part of, the same Project which is the subject of the [architecture contract] and that the arbitration provision and other material provisions of the [architecture contract] apply to the Oral Contract, and are incorporated therein by reference, with the exception of the compensation provisions thereof."
This argument is repeated on appeal, where BES contends (1) that the dispute involving the oral agreement "arises out of, is related to, and the existence of which is referenced in" the architecture contract, BES's brief, at 4, (2) that "[t]he arbitration provision of the [architecture contract] should be deemed incorporated by reference into the subsequent Oral Contract," BES's brief, at 24, and (3) that "[i]t is reasonable to assume that the parties' reference in their [architecture contract] to a second agreement to be made later, involving the same underlying transaction, would otherwise include the same terms as their [architecture contract]," BES's brief, at 25. Finally, these assertions are supported and explained by Bolton's undisputed evidence, where he testified that the civil-design and survey work was related to the project and states explicitly that "the terms of that oral agreement were the same as those of the [architecture contract]."[2]
Because the undisputed evidence indicates that the dispute in this case arose out of and is related to the architecture contract, which contains an arbitration clause, and that any oral contract further contained the "same" terms, I cannot say "with positive assurance" that the "broad[ly] appli[ed]" phrase "arising out of or relating to" is "not susceptible of an interpretation that covers the asserted dispute" in this case. I must "generously construe[]" this phrase, and resolve any doubts I may have "in favor of arbitration." Kenworth, 988 So.2d at 545, Unum Life Ins., 897 So.2d at 1086.[3] Therefore, I *577 would hold that the dispute is within the scope of the arbitration provision in this case and further hold that the trial court erred in denying BES's motion to compel.
NOTES
[1] It appears from this portion of the motion to compel that BES believed that the Fair Association claimed that the addendum to the architecture contract applied to the fees paid for the civil-design and survey work. However, the record before us does not elaborate on this issue.
[2] Justice Lyons implies that, in pointing to Bolton's testimony that the terms of the alleged oral agreement were the same as those of the architecture contract, which testimony is not explicitly cited in BES's brief, I "completely ignore" Rule 28, Ala. R.App. P., requiring an appellant to cite authority and evidence supporting its arguments. However, I offer the separate and independent theory that the terms of the architecture contract were incorporated into the oral contract only to respond to Justice Lyons's extensive argument in his special writing regarding whether the arbitration provision in the architecture contract applies to the dispute in question. Justice Lyons's argument was not relied upon by the Fair Association  and none of his authorities were cited  either in the trial court or on appeal, even though it was the Fair Association's burden in the trial court to show that the arbitration provision proffered by BES did not apply to the dispute in this case.

This Court may affirm a trial court's judgment for reasons raised for the first time on appeal, and Justice Lyons is free to identify such reasons in this case. In fact, I agree with the general principle expressed in the caselaw from the second circuit he has cited indicating that parties to multiple contracts should not be required to arbitrate a dispute under one contract simply because another contract between the parties contains a broad arbitration provision. However, I point out Bolton's testimony to demonstrate that BES could show evidence in the record to respond to these new arguments, which it has not had the opportunity to do.
[3] The Fair Association also argues on appeal that BES failed to demonstrate that the oral contract affected interstate commerce. BES, however, argues that the dispute should be arbitrated under the terms of the architecture contract. It is clear from Bolton's affidavit that the project included the purchase of components, equipment, and appliances from out-of-state vendors. In the context of the Federal Arbitration Act, the Supreme Court has held that the term "affecting commerce" signals "the broadest permissible exercise of Congress' Commerce Clause power" and that "the Commerce Clause gives Congress the power to regulate local business establishments purchasing substantial quantities of goods that have moved in interstate commerce." Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56-57, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003).